The next case called for oral argument is Gurley v. Merriman. May it please the court, counsel. My name is Josh Stratmire. I'm an attorney at Kruger Henry & Hunter, which represents the appellant in this case, Linda Gurley. This is a partition case involving approximately 305 acres of farm pasture land in Shelby County, Illinois. There is no dispute that the appellant in this case, Linda Gurley, owns an undivided one-third interest in real estate, along with her brother Truman Merriman and her sister Agnes Dunn, who both also own that undivided one-third interest in real estate. The parties received their respective interest in this property through a series of trusts and conveyances. And this partition case was filed by the appellant, Linda Gurley, in December of 2007. This real estate has been owned by the family for a number of years, and it's the desire of the appellant to keep as much of this property in the family name as possible. When I read the briefs, there was some allusion or indication as to family problems or family disagreements that would impair the joint ownership here, and that otherwise would have an effect, internal family problems that would have an effect on the disposition of this property. Are those in the record? And if so, can you tell me what they are? I don't know that those are specifically in the record as to what those are or what the problems were. I don't believe that it necessarily precludes partition or shows manifest prejudice to any of the parties in the partition plan that was introduced by the commissioner. I believe the commissioner's report shows that this property can be partitioned and that each of the tracts, if divided at the time, would be equal and there would be no manifest prejudice. So as far as any hard feelings or ill will between the parties, I don't know that it necessarily applies to the issue that's really in front of the court. I think the law that applies here is the statute 735 ILCS 5-17-15, which sets forth the procedure that the court is to follow in a partition case. And it first requires that the trial court ascertain who the owners of the property are and their titles and interest in the property. Secondly, it states that the court should then determine whether or not the premises or any part thereof can be divided among the parties without manifest prejudice to the parties. And if the court finds that a division can be made, then the court shall enter a judgment dividing the property. The statute goes on to say if the court finds that a whole or part of the property cannot be divided without manifest prejudice to the owners, then the court shall enter an order to have the property sold. And in this case, excuse me, the statute, you know, it almost acts as if it's a flow chart. First, the court finds who the owners are, then can it be divided. If the answer to that question is yes, then the court is to divide. As long as there's no manifest prejudice. Now, if that division would be manifestly prejudicial to the parties, then and only then is the trial court to order a sale. Didn't the trial court, one of its stated reasons for manifest injustice was that there was going to be a necessity of easements? That is correct. Can you discuss that and how important that was? I can. The commissioner's report divided the plan for partition, divided this into three tracks. The commissioner recommended that there be an easement across the northern portion of Track 1 for access to the northern portions of Tracks 2 and Tracks 3. And which track was it that your client was interested in? She wanted Track 1 because that's the track that is directly across from her house where she resides. In other words, her track is the one that would be burdened with the easement. That is correct. And it's important, I think, to note as well that over all three of these tracks have significant amounts of road frontage. So the commissioner was not saying that this easement is going to be the only way of ingress and egress to Tracks 2 and 3. He's saying that there's drainage ditches that transport the northern portions of Tracks 2 and 3, and instead of having to construct some type of bridge or some type of way to cross that drainage ditch, the best way is to have an easement across Track 1, which will allow for ingress and egress into the northern portions of Tracks 2 and 3. Would there also have to be an easement across Track 2? That is correct. To get to Track 3. To get to Track 3. That is correct. Section 106 of the Partition Statute provides for the appointment of a commissioner, as I mentioned, and the parties agreed in this case to appoint a commissioner. Did they have any choice in who that commissioner is? The parties idly agreed in this case as to who that commissioner was, and Andy Clark was appointed as commissioner, and he testified in trial or at the hearing that he's a certified general real estate appraiser, that he is a licensed real estate broker. He testified that he's done thousands of appraisals, and he also used to do work for the USDA and Forest Service, and he also testified that he has acted as commissioner five or six times in previous partition cases. And he submitted his report to the court in June of 2009, which consisted of a summary letter, and then also a detailed analysis of the real estate and comparable sales. And in that summary letter, he states that there's two options. Number one is that the property can be sold, and number two, that a split of the property between the three owners could be done, and then he details again how those tracks could be partitioned in time. He concludes his report by saying, and this is a quote from his letter, saying, outside of a total sale, I recommend that the farm be partitioned in the above-noted manner. There is a minor difference in acreage amounts. However, the overall value is considered to be very similar in nature. So according to the commissioner's report, the way he had this divided, there was no manifest prejudice to the parties that these were three equal parcels with equal value. A hearing on the claims partition was held in October of 2009. The only testimony at that hearing was from the commissioner and from the appellant, Linda Gerber. The commissioner testified about his report. He testified about the nature of the property. He stated that it's general farmland with rolling pastures, woodlands, ponds, just typical farm located in southern Illinois. And then he testified how it could be easily divided into three parcels, again, each with road fronts and with substantially the same value. He then reiterates his recommendation that favor partition. And he further testified it would be a minimal cost to divide the property as he recommended because of the way the parcels were set up. You basically would normally have to have a surveyor to locate the corner points and then set forth where the easement would be. The only additional testimony, again, was from Linda Gerber, which she testified that she wanted the property divided or partitioned in kind because she wanted to keep as much property in the family as possible. And she testified that she wanted tract one, again, because it was the one that was directly across the road from her residence. But despite the commissioner's report and the testimony, real estate could be divided, the trial court rejected the commissioner's report and ordered that the entire real estate be sold. And that's the order that we're appealing, requiring the sale of the full parcel. Again, our standard of review on this case, we believe, is manifest weight. And we've cited cases in our brief with regards to manifest weight of the evidence. And we believe, based on that standard, that the order must be reversed. And we've cited cases that state that the testimony of a witness is neither contradicted nor inherently improbable. The testimony cannot simply be disregarded. We believe that's what the trial court has done here. They have disregarded the evidence consisting of the commissioner's report and the commissioner's testimony. Again, his report and testimony state that real estate can be divided equally among three parties, and he recommends that it be partitioned. The commissioner stated in his testimony that he felt that he accomplished his goal. His goal was to essentially come up with three tracts that were very similar in value. He testified that he believed he accomplished that. And there was no evidence in the hearing of any manifest prejudice to any of the parties if the property were divided in this manner. And the trial court essentially states three reasons for finding manifest prejudice. One was the first trial court report points to the uniqueness of the three tracts. But, of course, they're going to be. All real estate is unique. That doesn't mean that it cannot be divided into three parcels that are equal in value. Some of the tracts, like I said, do have more real estate than others. Some have more marketable timber than others. But the bottom line is the commissioner determined based on his report, considering all those factors, that the three tracts that he has laid out in his report are equal in value, which would not cause any manifest prejudice to any party. And, as you mentioned, the trial court also hits on that there needs to be an easement to access the northern portions of Tracts 2 and Tracts 3. Again, all of three have road frontage. And this is, again, just to the extreme northern portions of Tracts 2 and Tracts 3. And the easement would actually cross Tracts 1 and Tracts 2 to benefit Tracts 2 and 3. So would the judge have the authority to require an easement over Tract 1 and Tract 2? I believe so. I believe so. And we set a case in our brief. It's Allen Dorff versus Daly, which states that it was and is a partition commissioner's primary duty to make a fair and impartial partition if possible. The court goes on to say, in order to equalize allotments of land, they clearly may charge one portion with an easement in favor of another portion. So I believe the answer to that question is yes, that the court could establish that an easement is necessary for the benefit of Tracts 2 and 3. But just because there's an easement or an easement would be necessary to access these portions of Tracts 2 and 3 does not mean that there's any manifest prejudice to any of the parties due to the necessity for an easement. And third, the trial court rejects the commissioner's report due to the unique income-producing capability of each parcel of the real estate. But the commissioner took this into account in coming up with a value for the property. And he basically says that each acre of this real estate has essentially the same amount of income-producing capability. It could be either through row cropping or a CRP program or through hunting rides. He takes that into account in his report in coming up with these parcels, so it's not something that he has overlooked. So according to evidence, the income-producing capability is actually the same on all three tracts of the property. So in conclusion, the partition statute is clear. If the property can be partitioned and it can be divided in kind without any manifest prejudice to any of the parties, the court shall do so. That's the first option. Public sale should only be used as an option of last resort. And if you can't divide 300 acres of farmland with no structures, no buildings, if you can't divide 300 acres between three people, then you can't partition any property in the state of Illinois. I believe the trial court disregarded the uncontroverted testimony in the trial court of the commissioner and the commissioner's report. We believe that his order requiring the sale of the property is against the manifest way of evidence.  Thank you, counsel. May it please the court, counsel. My name is Blaine Osmond, and I represent the appellees in this case, Truman Merriman, Jr. and Douglas Dunn. And they are the heirs, along with Linda Gurley, of Violet Merriman. First, I'd like to point out the point that the counsel made at the end in reference to the nature of the ground. The ground is not equal. It's very, very levels of elevation. And to say that it is completely all the same, I think it kind of mischaracterizes some of it. But this is an appeal of partition action, and the standard review for this case, as counsel pointed out, is manifest way of the evidence. I think that looking at the judge's ruling, trial court's ruling, there's two parts to that. Number one, Judge Jackson did not disregard the testimony or reports or exhibits or the testimony of Mr. Clark in making a decision. He used this information to make a rational decision. And the second part of that is that Judge Jackson, the trial court, did not ignore or disregard Illinois law in reference to the partition action. And the closing counsel had just mentioned the flow chart, so to speak, in reference to how the partition action works. And that is correct. You need to come through and you need to have a commissioner, which was done in this, three two-item parties. Commissioner came up with two different options. And in this reference, it is the court who makes the decision, not the commissioner. But I am confused by maybe how the commissioner chose to arrive at his conclusion. Doesn't he look at these factors that the court looks at, the uniqueness of the property, the soil type, the land use, the income, whether or not one party would, whether or not they'd be equal? Yes, he needs to, the commissioner needs to look and see how, in his opinion, it can be divided in any type of manner, if it can be. If it can be divided, using essentially the same criteria that the court used. And didn't he determine it could be divided? Yes, and the commissioner's point, he thought that this partial split that he had recommended could be done. But at the end, the court, in its opinion, has to be able to make that decision. It rejected that and chose the option of sale. On what basis, though? On the basis is, on the four items that were mentioned previously by counsel that's in the order by the judge's order, he goes through and he mentions, he lays out the two options that the commissioner pointed. And he rejects the second option, that it would be manifest prejudice to award this partial split in three ways, this controversial split. And he names the unique nature of the ground, the soil types, the income-producing capability that was there, and also the easements that would have crossed the northern portion of the ground. And the trial court's opinion, in its discretion, it decided that that would be manifest prejudice to the parties. And it would be more equitable and least prejudicial if it would go ahead and have the sale rather than this controversial split. Answer your opponent's question that he kind of posed to us in a rhetorical way at the end of his argument. If you can't divide 300 acres of farmland between three people, when can you actually partition? Well, I think you get a window into what the trial court was thinking if you look in the record at the end where the trial court addresses the parties. And he mentions that upon listening to the testimony and looking at the aerial view that was provided to defendants in exhibit number one, which is in the record, that the trial court notes that there was difference in wooded areas, CRP, and the easements that would go across it. And I'm paraphrasing, of course, to the trial court that he finds it hard to believe that each acreage is worth the same amount of money. But then isn't he essentially substituting his opinion for the expert's when the expert took all these things into consideration and decided that – determined that it could be divided equally? Well, I think that's in the trial court's realm to listen to the evidence that is presented to it and to – because since he is sitting there, he has the manifest way of evidence of that to judge and to hear the testimony of that day. And when the appellant, Ms. Gurley, also had said in testimony that she thought that some of the property was worth more than other portions of the property. And I think that the trial court is in the position to take that into account as part of the partition action to make the ultimate decision on that and have the commissioner either to accept the commissioner's report or, in that case, reject it. And I think that the – he did not reject the commissioner's report whole. He did accept a portion of the settlement. So I think that, yes, the commissioner makes a recommendation, but I don't think that's at all for the judge at all. I mean, it is a recommendation as such. And the judge took that into account in this case because he went through and noted that he had listened and looked through everything as far as it is worth, where he has mentioned each of these reasons why – as a whole, why he does not think that it can be done in the judge's discretion on that issue. Do you think he would have been free – if the commissioner had come back and said, I don't think it can be divided, and the judge found that it could be divided, do you think that that would be upheld or could be upheld? I think it would – If it was in his discretion. I think it would be in their discretion depending upon – depending on what the judge – since these cases are so fact-based, each ground is probably worth 300 acres, 200 acres, I think that if the judge or the commissioner had come back and said, I can't do it completely, there's no way I can do it, I'm not sure on that instance what the basis would be for them to come – for the judge to say that. In this instance, there was two options. There was option number one to sell or option number two was to do the – I'm sorry. Option number two was to do this controversial split, and I think that in that case, they were a little bit more fact-specific. I think that that could happen. It is in the judge's ruling. Of course, if the judge did that, we wouldn't be here today and have the same argument. It would be controversial nonetheless. I'll ask you the same question I asked opposing counsel. What – there was an allusion to internal family problems. What were they – if they're indicated in the record, what effect did they have on the judge's exercise of discretion? I do not believe this – some of that is not in the record, Your Honor, of course, but we wouldn't be here with a partition suit, of course, if there wasn't some internal family conflict. There is internal family conflict. Parties are not speaking or talking to each other, which is always an issue, I think, which is in the record that the judge indicated in the record. Maybe it looks like the parties aren't talking. But as far as – the judge in this case had not heard any of that previously, I believe. He was newer to this case, this issue, and had not been involved in the state issues that – in the past. So, I mean, there are internal family issues. Otherwise, we probably wouldn't be here today if we were not. If I could move on into the – with – excuse me. As far as with the manifest way of the evidence, again, I do not believe that the trial court disregarded this testimony. As I mentioned earlier, Judge Jackson can mention how he reviewed this case and he looked through the area of view in his opinion or his discretion. He did not view this as everything being equal. And I think, lastly, that Judge Jackson did not ignore the disregard of Illinois law by favoring the sale of the property because ultimately it's the judge's discretion, it's not the commissioner's. The Partition Act states that partition is the job of the trial court, not the commissioner. And there has been case law that partition is favored, but there's nothing in there that states that no partition is required to be done. I do not think that the judge's ruling in this – against the manifest way of the evidence because I don't think that the opposite decision is apparent. I think that there was enough information there that the judge made a very reasoned decision. He looked through all the evidence. He weighed this evidence. He listened to the commissioner. He repelled it early. And he also went through and looked at all the exhibits, and that's illustrated by his order where he rationally goes through and he mentions each of those options with the easements. And also I know that there has been discussion with the easements, and I wanted to point out to that, that in the record, the easements to the northern portion are required because there is a creek that is relatively low in the northern portion and is hard to cross during certain times of the year. And even though there is road access on most of those tracks, they would not be able to access the northern regions because of that creek during the wet season. And also I would look at track number one, and they say that track number two and track number three have road access. They do. Track number one, though, has a lot of road access, which the commissioner has pointed out in this report. Thank you. Thank you, Counsel. Counsel? The report was exactly correct. You point out that the three reasons or the three points of the trial court and based its decision on it finding its manifest prejudice to the parties, that being the uniqueness and the use of the easement and the income-producing capability of its properties, those are all factors that the commissioner based his decision. He considered each one of those elements and came up with a plan that still partitions this property in kind in a way that is non-prejudicial to any of the parties and that they all have equal value. I think what we have here is that despite hearing the commissioner's report or seeing the commissioner's report and hearing his testimony, that the trial court has substituted their own opinion or classes in this case and did not base their decision of manifest prejudice on the record and on the evidence that was presented before it. They go basically outside of the record in order to come up with some manifest prejudice in this case. That's why we believe that looking at all the evidence, it clearly shows that this property can be divided and it can be divided in a substantially similar manner and that according to the partition statute, if that can be done, that's what should be done. That's why we ask this court to reverse the trial court's decision ordering the sale of the entire property. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel to take this case under advisement.